**UNITED AIRLINES, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 95 C 304.**

United States District Court,
N.D. Illinois,
Eastern Division.

June 27, 1996.

James L. Malone, III, McDermott, Will & Emery, Chicago, IL, Christopher Kliefoth, McDermott, Will & Emery, Washington, DC, for United Airlines, Inc.

Carole Judith Ryczek, United States Attorney's Office, Chicago, IL, Douglas W. Snoeyenbos, United States Department of Justice, Tax Division, Washington, DC, for United States of America.

### MEMORANDUM AND ORDER

LINDBERG, District Judge.

Plaintiff, United Airlines, Inc., filed this action seeking a refund of excise taxes allegedly overpaid to defendant, the United States of America. A jury returned a verdict in favor of plaintiff and against defendant. Pursuant to the stipulation of the parties as to the amount of damages in the event liability was found, judgment in the amount of $4,076,602.00 was entered in favor of plaintiff and against defendant. Defendant has now filed a renewed motion for judgment as a matter of law pursuant to Rule 50(b). FRCP 50(b).

In its renewed motion for judgment as a matter of law, defendant argues:

3. In this case, the plaintiff is seeking a refund of federal air transportation excise taxes that are "imposed upon the amount paid for taxable transportation" by 26 U.S.C. § 4261. The tax is paid by the person making the payment subject to the tax. 26 U.S.C. § 4261(d). The tax is collected from the customer by the airline which receives the payment for taxable transportation. 26 U.S.C. § 4291. Rev. Rul. 89–109, 1989–2 C.B. 232, ... holds that

> To the extent the airline refunds to the passenger the amount paid for the air transportation, the collected transportation tax attributable to the amount of such refund may be refunded to such passenger. However, to the extent the airline does not refund to the passenger the amount paid for the air transportation, the collected transportation tax attributable to such nonrefunded amount is to be remitted by the airline to the Government.

The plaintiff's claims in this action could not be maintained without a favorable finding on the issue of whether, on cancellation of the restricted fare tickets at issue, the plaintiff refunded the entire amount originally paid for transportation by air. The trial record contains no legally sufficient evidentiary basis for a reasonable jury to find for the plaintiff. In fact, each of the witnesses in this action testified that on cancellation of the restricted fare tickets, the plaintiff did not refund the entire amount originally paid. Therefore, pursuant to F.R.C.P. 50(b), this Court should enter judgment as a matter of law in favor of the United States.

. . . .

11. The plaintiff's claims in this action could not be maintained without a favorable finding on the issue of whether it refunded the entire amount originally paid for transportation by air to its customers. ... During trial of this action the plaintiff was fully heard on this issue, and the record contains no legally sufficient basis for a reasonable jury to find for the plaintiff on it. Therefore, pursuant to F.R.C.P. 50(b), this Court should enter judgment as a matter of law in favor of the United States.

Defendant's argument bears little relationship to the evidence at the trial.

As it has done frequently before, defendant quotes Revenue Ruling 89–109. It is important to remember that the excise tax at issue is imposed only on amounts paid for transportation by air. 26 U.S.C. §§ 4261(a), 4262(a). Based upon the evidence presented in this case, this court is of the opinion that the amounts paid by customers, whether denominated penalties or service charges, to cancel their transportation by air were not subject to the excise tax because they were not amounts paid for transportation by air. It therefore appears that Revenue Ruling 89–109 is contrary to the statute, in that it would impose the federal excise tax on amounts paid other than for transportation by air, and should not be followed. However, even if Revenue Ruling 89–109 correctly stated the law, defendant would not be entitled to prevail.

The evidence on this question at trial came from the testimony of several witnesses and from exhibits providing examples of the paperwork that was prepared at the time of the cancellation of restricted tickets and of plaintiff's tariffs.

The witnesses and the examples of the paperwork prepared at the time of the cancellations established that when a restricted ticket was cancelled, plaintiff refunded to its customer the entire amount of the fare and the excise tax and assessed a penalty. The evidence further established that a netting of the amount of the penalty against the total amount of the fare and tax resulted in the amount of cash, credit card credit, or credit toward other transportation by defendant received by the customer.

The testimony of plaintiff's accounting expert corroborated the other evidence. Plaintiff's accounting expert was of the view that accounting entries should reflect economic reality, and that plaintiff's accounting entries showed that when a customer cancelled a restricted ticket, the amount of penalty owed by the customer to plaintiff was netted against the total amount of fare and excise

tax owed as a refund by plaintiff to the customer.

The court agrees with defendant that, "Tax liability depends not on bookkeeping but on actual economic events." This is why the accounting expert's testimony about plaintiff's accounting is merely corroborative. More important to the decision of this case were the testimony of the other witnesses and the exhibits showing the paperwork prepared at the time of cancellation, both of which established the repayment of the entire amount of fare and tax in the netting transactions.

Defendant does not help its cause by wrenching testimony out of its context to state, "United's accounting expert admitted that United 'was free to set up their books and records however they wanted to.'" The question and answer were:

Q [counsel for defendant]. Now, you said that United could have set up their books and records differently, is that correct?

A [plaintiff's accounting expert]. They are free to set up their books and records however they wanted to, and if—

Q. And isn't it true—

MR. KLIEFOTH: Excuse me.

THE COURT: Let him finish his answer.

A. If you are at all intelligent in setting up your books and records, you are going to set them up so as to be able to facilitate the preparation of the annual report to your shareholders, the 10–K reports to the SEC, the quarterly reports to the SEC, the 150 or 200 State income tax returns you have to file, the Federal income tax returns.

And, then, on top of that, you want the system to be able to measure profit out of ever[y] city that you do business in. You want to know whether you are making money out of your assets invested in Detroit, Chicago, New York, Boston.

So you want to be able to measure profit by profit center. And so you would set up your books and records to facilitate management, operation of the business, and then the compliance of all of the various regulations, including the income tax regulation, the safety department—you know, the Department of Transportation regulations, and it only makes sense to set up your system that way.

In context, the sentence fragment defendant quoted from plaintiff's accounting expert's testimony did not concern whether plaintiff's books and records were required to reflect actual economic events.

Defendant finds the following statement from *Statland v. American Airlines, Inc.* significant:

Iris Statland bought an American Airlines ticket with a 10 percent cancellation penalty. When she canceled it American kept 10 percent of the federal tax she paid, or $1.25, in addition to 10 percent of the ticket price.

*Statland v. American Airlines, Inc.*, 998 F.2d 539 (7th Cir.1993). In *Statland* the district court, based upon an initial review of the complaint, dismissed the action for lack of federal subject matter jurisdiction. See *Statland v. American Airlines, Inc.*, 1992 WL 80055 (N.D.Ill.). This is important for two reasons. First, the court was not finding any facts, but rather only determining whether there was subject matter jurisdiction based upon the allegations of the complaint. Second, the issue before the Seventh Circuit was not whether American Airlines, Inc., in fact kept a percentage of the fare and tax, but whether the plaintiff had a private right of action. See *Statland v. American Airlines, Inc.*, 998 F.2d 539 (7th Cir.1993); *Statland v. American Airlines, Inc.*, 1992 WL 80055 (N.D.Ill.). Therefore, the Seventh Circuit's statement from *Statland* quoted by defendant is really of no assistance in determining the issues in the present action.

ORDERED: The renewed motion · for judgment as a matter of law of defendant, the United States of America, is denied.